Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 31 | DATE | 6/21/2002 |
| CASE TITLE | ROBERT S. WILHELM vs. A.G. EDWARDS & SONS,INC. | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff Robert S. Wilhelm's motion to strike defendant's reply memorandum is denied as moot; and defendant, A.G. Edwards & Son, Inc.'s Rule 12(b)(6) motion to dismiss is granted and this case is dismissed with prejudice. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUN 24 2002 date docketed | 20 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | S.B. docketing deputy initials | |
| ✓ | Mail AO 450 form. | 02 JUN 21 PM 12:42 | | |
| ✓ | Copy to judge/magistrate judge. | FILED-ED 10 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT S. WILHELM, in his capacity as Executor of THE ESTATE OF MARGARET H. WILHELM,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 02 C 0031** |
| | ) | **Paul E. Plunkett, Senior Judge** |
| **A.G. EDWARDS & SONS, INC.,** | ) | |
| **Defendant.** | ) | |

DOCKETED
JUN 24 2002

**MEMORANDUM OPINION AND ORDER**

Robert Wilhelm, as Executor of the Estate of Margaret Wilhelm, has sued A.G. Edwards & Sons, Inc. for its alleged breach of the fiduciary duties it owed to Margaret. Defendant has filed a Federal Rule of Civil Procedure Rule ("Rule") 12(b)(6) motion to dismiss the complaint. For the reasons set forth below, the motion is granted.[1]

[1]In addition, plaintiff filed a motion to strike defendant's reply memorandum because it introduces facts not alleged in the complaint. Because we did not consider any of those facts in deciding the motion to dismiss, plaintiff's motion to strike is denied as moot.



## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## Facts

On November 2, 1993, Margaret Wilhelm was taken to defendant's office in Woodstock, Illinois by her son Frank. (Compl. ¶ 9.) Margaret and Frank opened a joint trading account with defendant and deposited $230,115.00 worth of stock into it. (Id. ¶¶ 9-11.) Frank, with defendant's acquiescence, proceeded to loot the account. (Id. ¶¶ 11-13.) By the end of 1994, the account was worth only $1500.00. (Id. ¶ 13.)

When Margaret and Frank opened the account, they signed a customer agreement, which contains the following provision: "The undersigned agrees and, by carrying any account for the undersigned, Edwards agrees that all controversies between the undersigned and Edwards or any of Edwards' present or former officers, directors, agents or employees which may arise for any cause whatsoever, shall be determined by arbitration." (Def.'s Mem. Law Supp. Mot. Dismiss, Ex. A ¶ 8.) When Margaret signed the agreement she was mentally incompetent. (Compl. ¶ 2.)

Margaret is now deceased and Robert Wilhelm, as executor of her estate, seeks to recover from defendant on a breach of fiduciary duty theory the value of the stock removed from the account and the lost dividend income that the stock would have generated. Defendant says that plaintiff's

claims are arbitrable pursuant to the arbitration clause in the customer agreement and, even if they are not, are time-barred under state law.

## Discussion

Defendant contends that the arbitration clause in the customer agreement encompasses all of the claims plaintiff raises in the complaint. Moreover, defendant says, the rules of the National Association of Securities Dealers require that all claims be submitted to arbitration within six years of their accrual. According to defendant, the claims plaintiff asserts accrued on November 2, 1993, when Margaret and Frank signed the contract with Edwards. Because the claims were not submitted to arbitration within six years of that date, defendant says, all avenues of relief are now closed to plaintiff.

Plaintiff, of course, has a different view. He argues that none of the provisions of the customer agreement, including the arbitration clause, is binding because Margaret did not have the capacity to contract when she signed the agreement. Because Margaret was, as a matter of law, unable to agree to anything, plaintiff says his claims are properly before the Court.

Before we can decide whether the parties agreed to arbitrate, we must first decide whether this Court is the proper forum to make that determination. The Supreme Court has said that "the question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (internal quotation marks and emphasis omitted). When deciding whether the parties agreed to arbitrate arbitrability, we must apply state contract principles with one exception: we cannot "assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." Id. at 944

claims are arbitrable pursuant to the arbitration clause in the customer agreement and, even if they are not, are time-barred under state law.

**Discussion**

Defendant contends that the arbitration clause in the customer agreement encompasses all of the claims plaintiff raises in the complaint. Moreover, defendant says, the rules of the National Association of Securities Dealers require that all claims be submitted to arbitration within six years of their accrual. According to defendant, the claims plaintiff asserts accrued on November 2, 1993, when Margaret and Frank signed the contract with Edwards. Because the claims were not submitted to arbitration within six years of that date, defendant says, all avenues of relief are now closed to plaintiff.

Plaintiff, of course, has a different view. He argues that none of the provisions of the customer agreement, including the arbitration clause, is binding because Margaret did not have the capacity to contract when she signed the agreement. Because Margaret was, as a matter of law, unable to agree to anything, plaintiff says his claims are properly before the Court.

Before we can decide whether the parties agreed to arbitrate, we must first decide whether this Court is the proper forum to make that determination. The Supreme Court has said that "the question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (internal quotation marks and emphasis omitted). When deciding whether the parties agreed to arbitrate arbitrability, we must apply state contract principles with one exception: we cannot "assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." Id. at 944

(internal quotation marks and citation omitted). Thus, if the arbitration agreement is silent or ambiguous on who decides arbitrability, we must construe it as excluding arbitrability from the scope of arbitrable issues. Id. at 944-45.

Though the arbitration clause in this agreement is worded very broadly, it is silent on the issue of who decides arbitrability. (Def.'s Mem. Law Supp. Mot. Dismiss, Ex. A ¶ 8.) That silence compels us to conclude that the parties did not agree to have the arbitrator decide which issues were arbitrable. Accordingly, the issue of whether the parties' disputes are arbitrable is properly before the Court.

That brings us to the heart of the matter: Did Margaret and Edwards agree to arbitrate the claims in this complaint? According to plaintiff, the answer is no because Margaret lacked the capacity to contract. She could not have agreed to arbitrate any disputes arising out of the customer agreement, plaintiff says, because she was unable to enter into the agreement itself.

As defendant notes, however, that kind of indirect challenge to an arbitration agreement – the agreement to arbitrate fails because the contract that contains it is flawed – has been condemned by the Supreme Court. In determining the validity of an arbitration agreement, the Court said, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate," not those relating to the making and performance of the contract that contains it. Prima Paint Corp. v. Flood & Conklin Mfg., Co., 388 U.S. 395, 403-04 (1967). Thus, the Prima Paint Court held, a federal court may decide whether an arbitration clause itself was procured by fraud, but not whether the whole contract was fraudulently induced. Id.

Following Prima Paint, a court must determine whether the alleged infirmity with an arbitration clause is unique to the clause or infects the contract as a whole. If it is the former, the

court can resolve the dispute. If it is the latter, the court can resolve the dispute only if the alleged flaw in the contract necessarily negates the existence of an agreement to arbitrate.

Our next task, of course, is to identify the contractual defects that necessarily preclude an agreement to arbitrate. According to the Ninth Circuit, the only ones that do so are those that render a contract void. Defects that render a contract voidable, that court says, have no impact on an agreement to arbitrate:

> [W]e read Prima Paint as limited to challenges seeking to *avoid* or *rescind* a contract – not to challenges going to the very existence of a contract that a party claims never to have agreed to..... Under this view, Prima Paint applies to "voidable" contracts – those where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract.... But, because an arbitrator's jurisdiction is rooted in the agreement of the parties, . . . a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate.

Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140-41 (9th Cir. 1991) (internal quotation marks and citations omitted). The Second and Third Circuits agree. See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 32 (2d Cir 2001) ("If a party alleges that a contract is void . . . , then [he] need not specifically allege that the arbitration cause in that contract is void, and [he] is entitled to a trial on the arbitrability issue.... [I]f a party merely alleges that a contract is voidable, then, for [him] to receive a trial on the validity of the arbitration clause, [he] must specifically allege that the arbitration clause itself is voidable."); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 107 (3rd Cir. 2000) ("[W]e draw a distinction between contracts that are asserted o be 'void' or non-existent, as is contended here, and those that are merely 'voidable,' as was the contract at issue in Prima Paint, for purposes of evaluating whether the making of an arbitration agreement is in dispute.").

The Seventh Circuit has not adopted the void/voidable distinction outlined in those cases, though it had the opportunity to do so in Sphere Drake Ins. Ltd. v. All Am. Ins. Co., 256 F.3d 587 (7th Cir. 2001). In that case, the parties disputed whether a broker allegedly representing Sphere Drake had the authority to issue reinsurance policies on its behalf. Because the contested policies contained an arbitration clause, All American argued that the authority issue should be decided by an arbitrator. Sphere Drake, on the other hand, contended that a court should resolve the dispute because it bore directly on the existence of the arbitration agreement.

The Seventh Circuit agreed with Sphere Drake.

> Unless the parties agree otherwise, they are entitled to have courts resolve their disputes. The parties in Prima Paint did agree otherwise and promised to have the arbitrator resolve "[a]ny controversy or claim arising out of *or relating to* this Agreement" (emphasis added), the broadest possible clause. Whether one party defrauded another during the negotiations for the agreement "related to" that agreement. There was no doubt that the arbitration agreement (and the contract of which it was a part) had been signed; both sides knew what they were getting. . . . [A claim of] [f]raud in the inducement does not negate the fact that the parties actually reached an agreement. . . . [A claim of lack of authority, however,] is not a defense to enforcement, as in Prima Paint; it is a situation in which no contract came into being; and as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator. . . .

Id. at 590-91. In the course of its opinion, the court characterized the reasoning of Sandvik and Three Valleys as "sound," but it did not mention the void/voidable distinction espoused by those courts. Id. at 591.

Despite the Seventh Circuit's silence on the subject, defendant urges us to make the void/voidable distinction the determining factor in this case. But, that distinction, though sensible in many contexts, does not work here. As an initial matter, a contract with an incompetent does not fall neatly into either category in this State. According to Illinois law, a contract executed before an adjudication of incompetency, as this contract is alleged to be, is voidable by the incompetent, In re

Robertson, 494 N.E.2d 562, 569 (Ill. App. Ct. 1986), but a contract executed after such an adjudication is "void as against [the incompetent] person and . . . his estate", 755 ILL. COMP. STAT. 5/11a-22(b). Use of the void/voidable distinction in this context, therefore, would make the validity of an arbitration agreement dependent on the timing of an incompetency adjudication, not the parties' intent.

Moreover, regardless of its treatment under state law, the defense of lack of capacity bears directly on the existence of an arbitration agreement. Like lack of authority, the defense at issue in Sphere Drake, Three Valleys and Sandvik, lack of capacity dooms both the arbitration agreement and the contract that contains it. If Margaret was incompetent when she signed the customer agreement, as plaintiff alleges, she could not have agreed to any of its provisions, including the arbitration clause. Because the dispute over Margaret's capacity to contract directly "relat[es] to the making . . . of the agreement to arbitrate," it should be resolved by a court. Prima Paint, 388 U.S. at 403-04.

Having determined that this Court is the proper forum for this dispute, we turn to the merits of the case. Defendant contends that plaintiff's claims are governed by the Illinois Securities Law ("ISL") and are untimely under that statute. Plaintiff says that he has alleged common law claims, which are timely under the applicable five-year statute of limitations, as tolled by Margaret's disability, that applies to them.

While it is true that plaintiff does not invoke the ISL in his complaint, his failure to do so does not necessarily place his claims outside of its reach. By its terms, the ISL applies not only to "actions . . . brought for relief under [the statute]," but also to actions brought "upon or because of any of the matters for which relief is granted by [it]." 815 ILL. COMP. STAT. 5/13D. Thus, if the

statute provides redress for the injuries alleged by plaintiff, it applies to his claims whether he has invoked it or not.[2]

Among other things, the ISL prohibits: (1) "any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof"; and (2) the use of "any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly." 815 ILL. COMP. STAT. 5/12F, I. Plaintiff alleges that Margaret was damaged when defendant: (1) allowed her to open a joint account with her son Frank, despite her obvious mental disability; (2) accepted Frank's representation that original stock certificates had been destroyed, and had the stock, which was owned solely by Margaret, reissued in Frank's name as well; (3) accepted a deposit of more than $230,000 of the reissued stock into the joint account; and (4) allowed Frank to deplete the account through a number of transactions, including trade orders. (Compl. ¶¶ 11-12.) In other words, plaintiff alleges that defendant's "course of business . . . work[ed] or tend[ed] to work a fraud or deceit upon [Margaret]." 815 ILL. COMP. STAT. 5/12F.

Nonetheless, plaintiff contends that his claims are beyond the scope of the statute because they are not predicated on the sale of any securities. Defendant did not sell any stock to Margaret, plaintiff says. Rather, it merely held her stock to secure the margin account. That characterization, however, is contradicted by the complaint, which alleges that defendant sold or otherwise disposed

---

[2]Defendant does not explicitly argue that the ISL preempts all common law causes of action relating to the purchase or sale of securities, but that must be so. Otherwise, plaintiffs could recast their securities claims as common law causes of action and avoid the statute's absolute five-year period of repose. Cf. Tregenza v. Lehman Bros., Inc., 678 N.E.2d 14, 15 (Ill. App. Ct. 1997) (applying ISL's statute of limitations to breach of fiduciary duty, fraud and negligent misrepresentation claims arising out of a sale of stock because the claims were "reliant 'upon . . . matters for which relief is granted'" by the statute) (quoting 815 ILL. COMP. STAT. 5/13D).

of the stock in the margin account, transactions that are covered by the statute. (Compl. ¶ 12); see 815 ILL. COMP. STAT. 5/2.5 (defining sale of securities to include "every contract of sale or disposition of a security or interest in a security for value").

Having determined that the ISL applies to plaintiff's claims, we must now determine whether those claims are timely. In relevant part, the statute provides:

> No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale; provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of subsection E, F, G, H, I or J of Section 12 of this Act which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of:
> (1) the date upon which the party bringing the action has actual knowledge of the alleged violation of this Act; or
> (2) the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act; *but in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable.*

815 ILL. COMP. STAT. 5/13D (emphasis added). Plaintiff did not file this action within the five-year repose period. Thus, according to the plain language of the statute, his claims are time-barred.

Despite the clear statutory language, plaintiff says that the repose period should be tolled, as a matter of public policy, because of Margaret's disability. It is clear that the State's public policy favors protecting the rights of the disabled, plaintiff says, because a number of causes of action, including those for personal injury and medical malpractice, are tolled during a claimant's period of disability. Those causes of action are tolled, however, only because the statutes that authorize them contain express tolling provisions. See 735 ILL. COMP. STAT. 5/13-211 (stating that statutes of limitations for personal actions are tolled for people under a legal disability until two years after the disability is removed); 735 ILL. COMP. STAT. 5/13-212(c) (setting forth the same tolling provision for the limitations period applicable to medical malpractice claims). The ISL, on the other hand,

states that the period of repose for securities claims cannot be tolled for any reason. In the face of that unequivocal language, plaintiff's policy argument is unavailing.[3]

**Conclusion**

For the reasons set forth above: (1) plaintiff's Rule 12(f) motion to strike defendant's reply memorandum is denied as moot; and (2) defendant's Rule 12(b)(6) motion to dismiss is granted and this case is dismissed with prejudice. This is a final and appealable order.

**ENTER:**

**UNITED STATES DISTRICT JUDGE**

**DATED:** June 21, 2002

[3]In reality, statutes of repose are themselves an expression of public policy, the policy of "terminat[ing] the possibility of liability after a defined period of time." Cunningham v. Huffman, 609 N.E.2d 321, 325 (Ill. 1993) (internal quotation marks and citation omitted).